WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
CHRISTIAN S. NAFZGER, IDAHO STATE BAR NO. 6286
JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF IDAHO
800 E. PARK BOULEVARD, SUITE 600
BOISE, IDAHO 83712-9903
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. CR-11-0068-S-EJL |
| vs. | ) **RULE 11 PLEA AGREEMENT** |
| SAMSON TORRES, a/k/a "Gremlin," | ) |
| Defendant. | ) |

Rev. April 2011 (General)

I. **GUILTY PLEA**

    A. **Summary of Terms.** Pursuant to Federal Rules of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(B), the defendant, the attorney for the defendant, and the Government[1] agree that the defendant will plead guilty to Count One of the Indictment, which charges the defendant with Conspiracy to Participate in a Racketeering Enterprise, in violation of 18 U.S.C. 1962(d).

This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this Plea Agreement. Upon acceptance of the defendant's guilty plea, and the defendant's full compliance with the other terms of this Agreement, the Government, under Federal Rule of Criminal Procedure 11(c)(1)(B), will recommend a sentence at the low end of the advisory guideline range, and under Rule of Criminal Procedure 11(c)(1)(A), will dismiss Counts Eight and Ten of the Indictment, which charge the defendant with Distributing Methamphetamine.

    B. **Oath**. The defendant will be placed under oath at the plea hearing. The Government may use any statement that the defendant makes under oath against the defendant in a prosecution for perjury or false statement.

II. **WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL**

The defendant understands that by pleading guilty, he waives the following rights: 1) the right to plead not guilty to the offenses charged against the defendant and to persist in that plea; 2) the right to a trial by jury, at which the defendant would be presumed innocent and the burden

---

[1] The word "Government" in this Agreement refers to the United States Attorney for the District of Idaho.

would be on the Government to prove the defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence without having that held against the defendant. If the District Court accepts the defendant's guilty plea, there will be no trial.

## III. NATURE OF THE CHARGES

    A. **Elements of the Crime.** The elements of the crime of Conspiracy to Participate in a Racketeering Enterprise, as charged in Count One, are as follows:

1. The existence of an enterprise;
2. The enterprise was engaged in, or its activities affected, interstate or foreign commerce;
3. The defendant, and/or a co-conspirator, was associated with the enterprise, and;
4. The defendant knowingly agreed that himself or a co-conspirator would participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

An "enterprise" is defined as any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. *See* 18 U.S.C. § 1961(4).

"Racketeering activity" is defined as any one of the criminal acts listed in 18 U.S.C. § 1961(1), and includes acts involving murder and arson chargeable under state law and

punishable by imprisonment for more than one year, and acts indictable under 18 U.S.C. § 1513 (relating to tampering with a witness, victim, or informant), 18 U.S.C. § 1513 (relating to retaliating against a witness, victim, or informant), and 21 U.S.C. §§ 841(a), 846 (relating to dealing in a controlled substance). *See* 18 U.S.C. § 1961(1).

A "pattern of racketeering activity" is defined as at least two acts of racketeering activity, one of which occurred after October 15, 1970, and one of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity. *See* 18 U.S.C. § 1961(5).

**B.     Factual Basis.** If this matter were to proceed to trial, the Government and the defendant agree that the following facts would be proven beyond a reasonable doubt:

The defendant is a member of an enterprise called the "Brown Magic Clica" ("BMC"), a Sureño street gang with members in the Districts of Idaho and Oregon. Members of BMC associate in fact, signifying their association by the use of the labels "BMC," "Eastside," "Southside," "13," and various derivations of those labels. BMC members also signify their association with BMC by wearing the color blue and by BMC-related tattoos and graffiti.

The activities of BMC affected interstate commerce. Members of BMC commonly crossed state lines through the use of interstate highways to engage in BMC-related business, including attending BMC meetings and committing crimes in furtherance of BMC. Members also engaged in interstate communication with other members through the use of phones and letters sent via U.S. Mail.

The defendant and other members of BMC agreed to participate in the conduct of BMC through a pattern of racketeering activity. BMC members were ordered by BMC leaders to

**Plea Agreement**                            -3-                            Rev. April 2011 (General)

engage in criminal activity, and to provide a portion of the profits during BMC meetings to be distributed to members who were incarcerated. The defendant attended BMC meetings on March 13, April 19, May 23, and June 20, 2009. During those meetings, members paid a portion of the proceeds from their criminal activity as "dues," and discussed BMC rules and whether BMC members were following the rules.

BMC rules provide that members are to engage in acts of violence to promote respect towards BMC members. An act of disrespect towards a member of BMC is grounds for retaliation by acts of violence. Members who engage in acts of violence obtain increased respect and standing in BMC. BMC rules provide that members are to engage rival gang members "on site."

On January 19, 2006, the defendant was a passenger in a vehicle, along with co-defendants Juan Jimenez a/k/a "Loco" and Amando Torres a/k/a "Toro," and other BMC members, which was traveling in Caldwell, Idaho. The defendant and the other BMC members in the vehicle believed they were being followed by members of a rival gang. The defendant and the other BMC members exited the vehicle. At least one of the BMC members began firing shots from at least one .45 pistol at the vehicle they believed contained rival gang members. The defendant states that he did not fire any shots at the vehicle. A passenger in the vehicle, N.Y., was struck in the calf by a bullet.

Between December 9, 2008, and October 21, 2009, the defendant engaged in conversations with BMC members who were incarcerated in Idaho prisons. The defendant spoke to H.A., co-defendant Adam Gomez a/k/a "Lil Toro," and co-defendant Alfredo Castro a/k/a "Papos," in addition to others, via the use of telephones. The conversations addressed the

activities of BMC members, whether members were following BMC rules, the distribution of BMC dues, and individuals who were cooperating with law enforcement. During a conversation with Gomez on January 3, 2009, Gomez ordered the defendant to have two juvenile BMC members commit arson against Club 7 in Fruitland, Idaho. During a conversation with Castro on February 8, 2009, Castro ordered the defendant to have BMC member J.S. physically attack and kill BMC member T.S.

On April 2, 2009, the defendant sold one-half ounce of methamphetamine to a BMC member working as a confidential informant in Ontario, Oregon. The methamphetamine was purchased for $1,000 and consisted of 7.6 grams of actual methamphetamine. On April 16, 2009, the defendant sold one-quarter ounce of methamphetamine to a BMC member working as a confidential informant in Caldwell, Idaho. The methamphetamine was purchased for $650 and consisted of 4.1 grams of actual methamphetamine. On July 2, 2009, the defendant sold one-quarter ounce of methamphetamine to a BMC member working as a confidential informant in Fruitland, Idaho. The methamphetamine was purchased for $700 and consisted of 6 grams of actual methamphetamine.

## IV. SENTENCING FACTORS

**A.** **Maximum Penalties.** A violation of 18 U.S.C. 1962(d), as charged in Count One, is punishable by a term of imprisonment of up to 20 years, a term of supervised release of not more than three years, a maximum fine of $250,000, and a special assessment of $100.

**B.** **Supervised Release.** Following release from prison, the defendant may be placed on supervised release for not more than three years.

The law permits the combined prison time and term of supervised release to exceed the

maximum term of incarceration for the crime to which the defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and/or prosecution.

    **C.**    **Fines and Costs.** The Court may impose a fine. No agreement exists as to the amount of the fine. The Court may also order the defendant to pay the costs of imprisonment, probation, and supervised release.

    **D.**    **Special Assessment.** The defendant will pay the special assessment before sentencing and will furnish a receipt at sentencing. Payment will be made to the United States District Court, Clerk's Office, Federal Building and United States Courthouse, 550 West Fort Street, Fourth Floor, Boise, Idaho 83724.

## V. UNITED STATES SENTENCING GUIDELINES

    **A.**    **Application of Sentencing Guidelines.** The Court must consider the United States Sentencing Guidelines (USSG) in determining an appropriate sentence under 18 U.S.C. § 3553. The defendant agrees that the Court may consider "relevant conduct" in determining a sentence pursuant to USSG § 1B1.3.

The Court is not a party to the Plea Agreement. The Plea Agreement does not bind the Court's determination of Sentencing Guidelines range. The Court will identify the factors that will determine the sentencing range under the Sentencing Guidelines. While the Court may take the defendant's cooperation, if any, and the recommendations of the parties into account, the Court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

Recognizing that the Court is not bound by this Agreement, the parties agree to the recommendations and requests set forth below.

B. **Sentencing Guidelines Recommendations and Requests.**

1. **Acceptance of Responsibility.** If the defendant clearly accepts responsibility for the offense, the defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under USSG § 3E1.1(a). The Government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met: (1) the defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the defendant has timely notified authorities of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. If, before sentence is imposed, the defendant fails to meet the criteria set out in USSG § 3E1.1, or acts in a manner inconsistent with acceptance of responsibility, the Government will withdraw or not make such a recommendation.

2. **Role in the Offense.** The Government agrees to recommend that the defendant be given a three level increase in his offense level due to his aggravating role as a manager of supervisor of the criminal activity, pursuant to United States Sentencing Guidelines Manual § 3B1.1(b). The defendant is free to argue against this recommendation.

3. **Base Offense Level.** The Government agrees to recommend a base offense level of 27, based upon the defendant's commission of the underlying racketeering activity of attempted second-degree murder, pursuant to U.S.S.G. §§ 2E1.1(a)(2) (Racketeering) and 2A2.1(a)(2) (Attempted Murder). The defendant is free to advocate for a lesser offense level.

      4.      **Downward Departure or Variance Request by Defendant.** Unless otherwise specified in this paragraph, the defendant will not seek a downward departure or variance under 18 U.S.C. § 3553(a), without first notifying the Government and informing it of the basis, in writing, not less than 21 days before the date set for sentencing.

      5.      **The Defendant Will Not Testify.** The Government will not call the defendant to testify against any of his co-defendants at any proceeding.

## VI.  WAIVER OF APPEAL AND 28 U.S.C. § 2255 RIGHTS

      A.      In exchange for this Agreement, and except as provided in subparagraph B, the defendant waives any right to appeal or to collaterally attack the conviction, entry of judgment, and sentence.

The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging the plea, conviction or sentence in this case. Further, if the defendant violates this waiver it will be a breach of this Agreement and the Government may withdraw from this Plea Agreement and take other remedial action.

If the defendant believes the Government has not fulfilled its obligations under this Agreement, the defendant will object at the time of sentencing; further objections are waived.

      B.      Notwithstanding subparagraph A, the defendant shall retain the right to file one direct appeal only if one of the following unusual circumstances occur; the defendant understands that these circumstances occur rarely and that in most cases this Agreement constitutes a complete waiver of all appellate rights:

      1.      the sentence imposed by the District Court exceeds the statutory maximum;

    2.  the District Court arrived at an advisory Sentencing Guidelines range by applying an upward departure under Chapter 5K of the Guidelines; or

    3.  the District Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory Sentencing Guidelines range as determined by the District Court.

Notwithstanding subparagraph A, the defendant may file one habeas petition (motion under 28 U.S.C. § 2255) for ineffective assistance of counsel only if: (1) the motion is based solely on information not known to the defendant at the time the District Court imposed sentence; and (2) in the exercise of reasonable diligence, the information could not have been known by the defendant at that time.

## VII. PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The defendant agrees to provide material financial and other information requested by a representative of the United States Probation Office for use in preparing a presentence report. Failure to execute releases and provide such information violates this Agreement. Such failure will subject the defendant to additional penalties, including an enhancement under USSG § 3C1.1, or an upward departure under § 5K2.0, and relieve the Government of the obligations in this Agreement. Such failure will not, however, constitute grounds for withdrawing the plea of guilty unless the Government so requests.

## VIII. NO RIGHT TO WITHDRAW PLEA

The defendant understands that the Court may not follow the recommendations or requests made by the parties at the time of sentencing. The defendant cannot withdraw from this Plea Agreement or the guilty plea, regardless of the Court's actions.

## IX. CONSEQUENCES OF VIOLATING AGREEMENT

**A.** **Government's Options.** If the defendant fails to keep any promise in this Agreement or commits a new crime, the Government is relieved of any obligation not to prosecute the defendant on other charges, including charges not pursued due to this Plea Agreement. Such charges may be brought without prior notice. In addition, if the Government determines after sentence is imposed that the defendant's breach of the Agreement warrants further prosecution, the Government may choose between letting the conviction(s) under this Plea Agreement stand or vacating such conviction(s) so that such charge(s) may be re-prosecuted. If the Government determines that a breach warrants prosecution before sentencing, it may withdraw from the Plea Agreement in its entirety.

**B.** **Defendant's Waiver of Rights.** If the defendant fails to keep any promise made in this Agreement, the defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the defendant entered a plea of guilty or which were dismissed under this Agreement. In addition, for any charge that is brought as a result of the defendant's failure to keep this Agreement, the defendant gives up: (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations expired after the defendant entered into this Agreement.

Furthermore, if the defendant does not enter an acceptable plea, the Government will move to continue the trial now set to allow the Government adequate time to prepare. The defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under 18 U.S.C. § 3161(h)(1)(G) or (h)(7)(A).

### X. MISCELLANEOUS

**A. No Other Terms.** This Agreement is the complete understanding between the parties, and no other promises have been made by the Government to the defendant or to the attorney for the defendant. This Agreement does not prevent any governmental agency from pursuing civil or administrative actions against the defendant or any property. Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this Agreement does not bind or obligate governmental entities other than the United States Attorney's Office for the District of Idaho. The Government will bring the defendant's cooperation and pleas to the attention of other prosecuting authorities at the defendant's or defendant's counsel's request.

**B. Plea Agreement Acceptance Deadline.** This plea offer is explicitly conditioned on the defendant's notification of acceptance of this Plea Agreement no later than 5:00 p.m. on September 16, 2011.

### XI. UNITED STATES' APPROVAL

I have reviewed this matter and the Plea Agreement. I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

WENDY J. OLSON
UNITED STATES ATTORNEY
By:

_____      _9-28-11_____
JUSTIN D. WHATCOTT                     Date
Assistant United States Attorney

## XII. ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand the Agreement and its effect upon my potential sentence. Furthermore, I have discussed all of my rights with my attorney and I understand those rights. No other promises or inducements have been made to me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney, concerning the plea to be entered in this case. In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including to enter a guilty plea. I am satisfied with my attorney's advice and representation in this case.

_Samson Torres_             9-21-2011
SAMSON TORRES            Date
Defendant

I have read this Plea Agreement and have discussed the contents of the Agreement with my client. The Plea Agreement accurately sets forth the entirety of the Agreement. I concur in my client's decision to plead guilty as set forth above.

_[signature]_            9/21/2011
CHARLES F. PETERSON            Date
Attorney for the Defendant