WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
CHRISTIAN S. NAFZGER, IDAHO STATE BAR NO. 6286
JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF IDAHO
800 E. PARK BOULEVARD, SUITE 600
BOISE, IDAHO 83712-9903
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. CR-11-0068-S-EJL |
| vs. | **RULE 11 PLEA AGREEMENT** |
| JESSIE RODRIGUEZ, a/k/a "Pelon," | |
| Defendant. | |

Rev. April 2011 (General)

I.  **GUILTY PLEA**

   A.  **Summary of Terms.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B), the defendant, the attorney for the defendant, and the Government[1] agree that the defendant will plead guilty to Counts One through Four of the Superseding Information, which charges the defendant with, in Count One, Conspiracy to Participate in a Racketeering Enterprise, in violation of 18 U.S.C. 1962(d); in Count Two, Assault with a Dangerous Weapon in Aid of Racketeering in violation of 18 U.S.C. §§ 2, 1959(a)(3); in Count Three, Attempted Murder in Aid of Racketeering in violation of 18 U.S.C. §§ 2, 1959(a)(5); and in Count Four, Assault with a Dangerous Weapon in Aid of Racketeering in violation of 18 U.S.C. §§ 2, 1959(a)(3).

   This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this Plea Agreement. Upon acceptance of the defendant's guilty pleas, and the defendant's full compliance with the other terms of this Agreement, the Government, under Federal Rule of Criminal Procedure 11(c)(1)(B), will recommend a sentence within the advisory guideline range, with the sentences to run concurrently, and will dismiss, under Federal Rule of Criminal Procedure 11(c)(1)(A), the defendant from the Indictment. The defendant agrees that the Court may consider uncharged "relevant conduct," including conduct alleged in any dismissed counts in arriving at an appropriate sentence pursuant to USSG § 1B1.3.

   B.  **The Defendant Will Not Testify.** The Government will not call the defendant to testify against any of his co-defendants at any proceeding.

---

[1] The word "Government" in this Agreement refers to the United States Attorney for the District of Idaho.

**Plea Agreement**              -1-                    Rev. April 2011 (General)

    **C.**    <u>Oath</u>. The defendant will be placed under oath at the plea hearing. The Government may use any statement that the defendant makes under oath against the defendant in a prosecution for perjury or false statement.

    **D.**    <u>Waiver of Indictment</u>. As part of this agreement, the defendant agrees to waive his right to indictment on the charges alleged in the superseding information pursuant to Federal Rule of Criminal Procedure 7(b).

## II.   WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL

The defendant understands that by pleading guilty, he waives the following rights: 1) the right to plead not guilty to the offenses charged against the defendant and to persist in that plea; 2) the right to a trial by jury, at which the defendant would be presumed innocent and the burden would be on the Government to prove the defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence without having that held against the defendant. If the District Court accepts the defendant's guilty plea, there will be no trial.

## III.   NATURE OF THE CHARGES

    **A.**    <u>Elements of the Crime.</u> The elements of the crime of Conspiracy to Participate in a Racketeering Enterprise, as charged in Count One of the Superseding Information, are as follows:

        1.    The existence of an enterprise;

        2.    The enterprise was engaged in, or its activities affected, interstate or

      foreign commerce;

  3.  The defendant, and/or a co-conspirator, was associated with the enterprise, and;

  4.  The defendant knowingly agreed that himself or a co-conspirator would participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

An "enterprise" is defined as any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. *See* 18 U.S.C. § 1961(4).

"Racketeering activity" is defined as any one of the criminal acts listed in 18 U.S.C. § 1961(1), and includes acts involving murder and arson chargeable under state law and punishable by imprisonment for more than one year, and acts indictable under 18 U.S.C. § 1513 (relating to tampering with a witness, victim, or informant), 18 U.S.C. § 1513 (relating to retaliating against a witness, victim, or informant), and 21 U.S.C. §§ 841(a), 846 (relating to dealing in a controlled substance). *See* 18 U.S.C. § 1961(1).

A "pattern of racketeering activity" is defined as at least two acts of racketeering activity, one of which occurred after October 15, 1970, and one of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity. *See* 18 U.S.C. § 1961(5).

The elements of the crime of Assault with a Dangerous Weapon in Aid of Racketeering, as charged in Counts Two and Four in the Superseding Information, are as follows:

  1.  The existence of an enterprise;

2. The enterprise was engaged in, or its activities affected, interstate or foreign commerce;

3. The enterprise engaged in racketeering activity;

4. The defendant committed the crime of violence of assault with a dangerous weapon in violation of state law, and;

5. The crime of violence was committed for the purpose of gaining entrance to, or maintaining or increasing position in, the charged enterprise.

The elements of the crime of Aggravated Assault in violation of Idaho Code §§ 18-901(b) and 18-905, as charged in Count Two of the Superseding Information, are as follows:

1. On or about July 8, 2006;

2. In the State of Idaho;

3. The defendant committed an assault upon A.C., W.C., A.C., S.Y., and others;

4. With a deadly weapon or instrument.

The elements of the crime of Aggravated Assault in violation of Idaho Code §§ 18-901(b) and 18-905, as charged in Count Four in the Superseding Information, are as follows:

1. On or about May 17, 2010;

2. In the State of Idaho;

3. The defendant committed an assault upon R.R. and others;

4. With a deadly weapon or instrument.

"Assault" is defined as an intentional and unlawful threat by word or act to do violence to the person of another, with apparently ability to do so, which creates a well-founded fear in the

other person that such violence is imminent. *See* Idaho Code § 18-901(b). "Deadly weapon" is defined as a weapon or instrument likely to produce death or great bodily injury, or an object that is capable of being used in a deadly or dangerous manner if the person intends to use it as a weapon. *See* Idaho Criminal Jury Instruction 1206, *State v. Missenberger*, 86 Idaho 321, 386 P.2d 559 (Idaho, 1963).

The elements of the crime of Attempted Murder in Aid of Racketeering, as charged in Count Three of the Superseding Information, are as follows:

1. The existence of an enterprise;
2. The enterprise was engaged in, or its activities affected, interstate or foreign commerce;
3. The enterprise engaged in racketeering activity;
4. The defendant committed the crime of violence of Attempted Murder in violation of state law, and;
5. The crime of violence was committed for the purpose of gaining entrance to, or maintaining or increasing position in, the charged enterprise.

The elements of the crime of Attempted Murder, in violation of Oregon Revised States §§ 161.155, 161.405, 163, 005, and 163.115, as charged in Count Three of the Superseding Information, are as follows:

1. On or about July 15, 2006;
2. In the State of Oregon;
3. The defendant aided, abetted, or agreed or attempted to aid and abet;
4. The commission of the crime of Attempted Murder;

Plea Agreement -5- Rev. April 2011 (General)

     5.     With the intent to promote or facilitate the commission of the crime.

"Attempt" is defined as a person intentionally engaging in conduct which constitutes a substantial step towards commission of the crime. *See* Oregon Revised Statute § 161.405(1). "Murder" is defined as the intentional causing of death of another human being, without justification or excuse. *See* Oregon Revised Statute §§ 163.005, 163.115.

     **B.**     **Factual Basis.** If this matter were to proceed to trial, the Government and the defendant agree that the following facts would be proven beyond a reasonable doubt:

The defendant is a member of an enterprise called the "Brown Magic Clica" ("BMC"), a Sureño street gang with members in the Districts of Idaho and Oregon. Members of BMC associate in fact, signifying their association by the use of the labels "BMC," "Eastside," "Southside," "13," and various derivations of those labels. BMC members also signify their association with BMC by wearing the color blue and by BMC-related tattoos and graffiti.

The activities of BMC affected interstate commerce. Members of BMC commonly crossed state lines through the use of interstate highways to engage in BMC-related business, including attending BMC meetings and committing crimes in furtherance of BMC. Members also engaged in interstate communication with other members through the use of phones and letters sent via U.S. Mail.

The defendant and other members of BMC agreed to participate in the conduct of BMC through a pattern of racketeering activity. BMC members were ordered by BMC leaders to engage in criminal activity, and to provide a portion of the profits during BMC meetings to be distributed to members who were incarcerated. The defendant attended a BMC meeting on May 23, 2009. During that meeting, members paid a portion of the proceeds from their criminal

activity as "dues," and discussed BMC rules and whether BMC members were following the rules.

On July 8, 2006, co-defendant Salvador Apodoca a/k/a "Bugz" was in an altercation with individuals attending a celebration of a child's baptism at a residence in Parma, Idaho. During the altercation, Apodoca threw BMC-related gang signs, and stated that he would be back with his "Eastsider friends" prior to leaving. Shortly thereafter, Apodoca, the defendant, and other BMC members arrived back at the residence and approached the crowd of people in the back yard of the residence. One of the BMC members stated they were there because "they jumped Sal." Another stated "you mess with one of us, you mess with all of us." Apodoca then threw a beer bottle at the crowd. The defendant then fired shots from a rifle at individuals in the crowd. BMC rules provide that members are to engage in acts of violence to promote respect towards BMC members. An act of disrespect towards a member of BMC is grounds for retaliation by acts of violence. Members who engage in acts of violence obtain increased respect and standing in BMC. The defendant admits that he committed the offense of Assault with a Deadly Weapon in Aid of Racketeering.

On or about between January 1, 2006 and July 15, 2006, members of BMC conspired to attempt to murder I.C., a rival gang member, by shooting at his residence as retaliation for I.C.'s alleged aggravated battery of a BMC gang member. On July 15, 2006, members of BMC acted in furtherance of this agreement by firing shots from a 9mm handgun at I.C.'s residence in Ontario, Oregon. As a result of the shooting, C.C. was struck by a bullet in the left leg, and suffered serious injury.

Shortly before the shooting, a witness observed the defendant approximately two blocks

**Plea Agreement** -7- Rev. April 2011 (General)

from I.C.'s residence, driving a silver and dark blue Ford Explorer. Two other BMC members were passengers in the vehicle. Witnesses observed a vehicle matching the description of the defendant's vehicle in the area of I.C.'s residence, along with a white Pontiac Grand Am, when the shots were fired. On July 20, 2006, co-defendant and BMC member Oscar Garcia a/k/a "Bubba" a/k/a "Tiny" was contacted by law enforcement in Ontario as a passenger in a White Pontiac Grand Am. He was arrested and found to be in possession of a 9 mm semi-automatic handgun. The Oregon State Police crime lab later determined that the handgun in Garcia's possession was used to fire the shots at the residence in Ontario on July 15th, 2006, based upon a comparison of shell casings found at the residence with shell casings fired from the handgun.

BMC rules provide that members are to engage rival gang members "on site." BMC rules also provide that members are to engage in acts of violence to promote respect towards BMC members. Members who engage in acts of violence obtain increased respect and standing in BMC. Members are also expected to support and participate in criminal activities that further BMC objectives. The defendant admits that he conspired and agreed to commit or aid and abet the crime of second degree attempted murder in furtherance of BMC, a racketeering enterprise.

On May 17, 2010, the defendant approached R.R. and several other individuals in Payette, Idaho. The defendant yelled "13th Street BMC" at the individuals. He then approached them and asked them what gang they were in. The individuals responded that they were not in a gang. The defendant then produced a knife, held it in his hand, and attempted to engage the individuals in a fight. BMC rules provide that members are to engage in acts of violence to promote respect towards BMC members. Members who engage in acts of violence obtain increased respect and standing in BMC. The defendant agrees that he committed the crime of

Assault with a Deadly Weapon in Aid of Racketeering.

## IV. SENTENCING FACTORS

**A.** **Maximum Penalties.** A violation of 18 U.S.C. 1962(d), as charged in Count One of the Superseding Information, is punishable by a term of imprisonment of up to 20 years, a term of supervised release of not more than three years, a maximum fine of $250,000, and a special assessment of $100.

A violation of 18 U.S.C. § 1959(a)(3), as charged in Counts Two and Four of the Superseding Information, is punishable by a term of imprisonment of up to 20 years, a term of supervised release of not more than three years, a maximum fine of $250,000, and a special assessment of $100.

A violation of 18 U.S.C. § 1959(a)(5), as charged in Count Three of the Superseding Information, is punishable by a term of imprisonment of up to 10 years, a term of supervised release of not more than three years, a maximum fine of $250,000, and a special assessment of $100.

**B.** **Supervised Release.** Following release from prison, the defendant may be placed on supervised release for not more than three years.

The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crime to which the defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and/or prosecution.

**C.** **Fines and Costs.** The Court may impose a fine. No agreement exists as to the amount of the fine. The Court may also order the defendant to pay the costs of imprisonment,

probation, and supervised release.

**D.** **Special Assessment.** The defendant will pay the special assessment. Payment will be made to the United States District Court, Clerk's Office, Federal Building and United States Courthouse, 550 West Fort Street, Fourth Floor, Boise, Idaho 83724.

**V.** **UNITED STATES SENTENCING GUIDELINES**

**A.** **Application of Sentencing Guidelines.** The Court must consider the United States Sentencing Guidelines (USSG) in determining an appropriate sentence under 18 U.S.C. § 3553. The defendant agrees that the Court may consider "relevant conduct" in determining a sentence pursuant to USSG § 1B1.3.

The Court is not a party to the Plea Agreement. The Plea Agreement does not bind the Court's determination of Sentencing Guidelines range. The Court will identify the factors that will determine the sentencing range under the Sentencing Guidelines. While the Court may take the defendant's cooperation, if any, and the recommendations of the parties into account, the Court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

Recognizing that the Court is not bound by this Agreement, the parties agree to the recommendations and requests set forth below.

**B.** **Sentencing Guidelines Recommendations and Requests.**

1. **Acceptance of Responsibility.** If the defendant clearly accepts responsibility for the offense, the defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under USSG § 3E1.1(a). The Government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following

conditions are met: (1) the defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the defendant has timely notified authorities of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. If, before sentence is imposed, the defendant fails to meet the criteria set out in USSG § 3E1.1, or acts in a manner inconsistent with acceptance of responsibility, the Government will withdraw or not make such a recommendation.

2.  **Downward Departure or Variance Request by Defendant.** Unless otherwise specified in this paragraph, the defendant will not seek a downward departure or variance under 18 U.S.C. § 3553(a), without first notifying the Government and informing it of the basis, in writing, not less than 21 days before the date set for sentencing.

3.  **Applicable Base Offense Level.** The Government agrees that it will seek a base level of 27 pursuant to USSG § 2A2.1(a)(2). The defendant is free to argue against this base offense level and recommend a lower base offense level.

4.  **Application of USSG § 2A2.1(b)(1).** The Government agrees that it will seek a two-level increase in the defendant's base offense level, due to the victim sustaining serious bodily injury during the acts detailed in Count Three of the Superseding Information. The defendant is free to argue against this increase.

5.  **Evidence relating to Count Two of the Indictment.** The Government agrees that it will not present evidence at sentencing of, or argue for application of the guidelines to, the acts detailed in count two of the Indictment, which is to be dismissed as part of this agreement. The Government further agrees that it will not argue at sentencing that the acts detailed in count two constitute relevant conduct.

## VI. WAIVER OF APPEAL AND 28 U.S.C. § 2255 RIGHTS

A.   In exchange for this Agreement, and except as provided in subparagraph B, the defendant waives any right to appeal or to collaterally attack the conviction, entry of judgment, and sentence.

The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging the plea, conviction or sentence in this case. Further, if the defendant violates this waiver it will be a breach of this Agreement and the Government may withdraw from this Plea Agreement and take other remedial action.

If the defendant believes the Government has not fulfilled its obligations under this Agreement, the defendant will object at the time of sentencing; further objections are waived.

B.   Notwithstanding subparagraph A, the defendant shall retain the right to file one direct appeal only if one of the following unusual circumstances occur; the defendant understands that these circumstances occur rarely and that in most cases this Agreement constitutes a complete waiver of all appellate rights:

1.   the sentence imposed by the District Court exceeds the statutory maximum;

2.   the District Court arrived at an advisory Sentencing Guidelines range by applying an upward departure under Chapter 5K of the Guidelines; or

3.   the District Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory Sentencing Guidelines range as determined by the District Court.

Notwithstanding subparagraph A, the defendant may file one habeas petition (motion

**Plea Agreement**                              -12-                              Rev. April 2011 (General)

under 28 U.S.C. § 2255) for ineffective assistance of counsel only if: (1) the motion is based solely on information not known to the defendant at the time the District Court imposed sentence; and (2) in the exercise of reasonable diligence, the information could not have been known by the defendant at that time.

## VII. PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The defendant agrees to provide material financial and other information requested by a representative of the United States Probation Office for use in preparing a presentence report. Failure to execute releases and provide such information violates this Agreement. Such failure will subject the defendant to additional penalties, including an enhancement under USSG § 3C1.1, or an upward departure under § 5K2.0, and relieve the Government of the obligations in this Agreement. Such failure will not, however, constitute grounds for withdrawing the plea of guilty unless the Government so requests.

## VIII. NO RIGHT TO WITHDRAW PLEA

The defendant understands that the Court may not follow the recommendations or requests made by the parties at the time of sentencing. The defendant cannot withdraw from this Plea Agreement or the guilty plea, regardless of the Court's actions.

## IX. CONSEQUENCES OF VIOLATING AGREEMENT

A. **Government's Options.** If the defendant fails to keep any promise in this Agreement or commits a new crime, the Government is relieved of any obligation not to prosecute the defendant on other charges, including charges not pursued due to this Plea Agreement. Such charges may be brought without prior notice. In addition, if the Government determines after sentence is imposed that the defendant's breach of the Agreement warrants

**Plea Agreement** -13- Rev. April 2011 (General)

further prosecution, the Government may choose between letting the conviction(s) under this Plea Agreement stand or vacating such conviction(s) so that such charge(s) may be re-prosecuted. If the Government determines that a breach warrants prosecution before sentencing, it may withdraw from the Plea Agreement in its entirety.

**B.** **<u>Defendant's Waiver of Rights.</u>** If the defendant fails to keep any promise made in this Agreement, the defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the defendant entered a plea of guilty or which were dismissed under this Agreement. In addition, for any charge that is brought as a result of the defendant's failure to keep this Agreement, the defendant gives up: (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations expired after the defendant entered into this Agreement.

Furthermore, if the defendant does not enter an acceptable plea, the Government will move to continue the trial now set to allow the Government adequate time to prepare. The defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under 18 U.S.C. § 3161(h)(1)(G) or (h)(7)(A).

**X.** **MISCELLANEOUS**

**A.** **<u>No Other Terms</u>**. This Agreement is the complete understanding between the parties, and no other promises have been made by the Government to the defendant or to the attorney for the defendant. This Agreement does not prevent any governmental agency from pursuing civil or administrative actions against the defendant or any property. Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this Agreement

does not bind or obligate governmental entities other than the United States Attorney's Office for the District of Idaho. The Government will bring the defendant's cooperation and pleas to the attention of other prosecuting authorities at the defendant's or defendant's counsel's request.

**B.** **Plea Agreement Acceptance Deadline.** This plea offer is explicitly conditioned on the defendant's notification of acceptance of this Plea Agreement no later than 5:00 p.m. on November 1, 2011.

## XI. UNITED STATES' APPROVAL

I have reviewed this matter and the Plea Agreement. I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

WENDY J. OLSON
UNITED STATES ATTORNEY
By:

_____　　　　　10/28/11
JUSTIN D. WHATCOTT　　　　　　　　　　　Date
Assistant United States Attorney

## XIII. ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand the Agreement and its effect upon my potential sentence. Furthermore, I have discussed all of my rights with my attorney and I understand those rights. No other promises or inducements have been made to me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney, concerning the plea to be entered in this case. In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including to enter a guilty plea. I am satisfied with my attorney's advice and representation in this case.

_____    _____
JESSIE RODRIGUEZ                                              Date
Defendant

I have read this Plea Agreement and have discussed the contents of the Agreement with my client. The Plea Agreement accurately sets forth the entirety of the Agreement. I concur in my client's decision to plead guilty as set forth above.

_____    11/25/2011
GREG S. SILVEY                                                Date
Attorney for the Defendant

**Plea Agreement**                    -16-                    Rev. April 2011 (General)