WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
CHRISTIAN S. NAFZGER, IDAHO STATE BAR NO. 6286
JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF IDAHO
800 E. PARK BOULEVARD, SUITE 600
BOISE, IDAHO 83712-9903
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. CR-11-0068-S-EJL |
| ) | |
| vs. ) | **RULE 11 PLEA AGREEMENT** |
| ) | |
| ALFREDO CASTRO, a/k/a "Papos," ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

Rev. April 2011 (General)

I.  **GUILTY PLEA**

   **A.   Summary of Terms.** Pursuant to Federal Rules of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(B), the defendant, the attorney for the defendant, and the Government[1] agree that the defendant will plead guilty to Count One of the Indictment, which charges the defendant with Conspiracy to Participate in a Racketeering Enterprise, in violation of 18 U.S.C. 1962(d).

   This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this Plea Agreement. Upon acceptance of the defendant's guilty plea, and the defendant's full compliance with the other terms of this Agreement, the Government, under Federal Rule of Criminal Procedure 11(c)(1)(B), will recommend a sentence at the low end of the advisory guideline range to run concurrently to the undischarged portion of the defendant's current sentence in the State of Idaho in case number CR-96-7008. Upon sentencing, the Government also agrees to notify the Idaho Department of Corrections, Department of Probation and Parole, of the defendant's federal sentence, including whether the Court ordered it to run concurrently to the defendant's current state sentence, and, if so, the advantages of having the defendant paroled to serve his federal time.

   **B.   The Defendant Will Not Testify.** The Government will not call the defendant to testify against any of his present or future co-defendants at any proceeding.

   **C.   Oath.** The defendant will be placed under oath at the plea hearing. The Government may use any statement that the defendant makes under oath against the defendant in

---

[1] The word "Government" in this Agreement refers to the United States Attorney for the District of Idaho.

**Plea Agreement**               -1-                    Rev. April 2011 (General)

a prosecution for perjury or false statement.

## II. WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL

The defendant understands that by pleading guilty, he waives the following rights: 1) the right to plead not guilty to the offenses charged against the defendant and to persist in that plea; 2) the right to a trial by jury, at which the defendant would be presumed innocent and the burden would be on the Government to prove the defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence without having that held against the defendant. If the District Court accepts the defendant's guilty plea, there will be no trial.

## III. NATURE OF THE CHARGES

A. **Elements of the Crime.** The elements of the crime of Conspiracy to Participate in a Racketeering Enterprise, as charged in Count One, are as follows:

1. The existence of an enterprise;
2. The enterprise was engaged in, or its activities affected, interstate or foreign commerce;
3. The defendant, and/or a co-conspirator, was associated with the enterprise, and;
4. The defendant knowingly agreed that himself or a co-conspirator would participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

An "enterprise" is defined as any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. *See* 18 U.S.C. § 1961(4).

"Racketeering activity" is defined as any one of the criminal acts listed in 18 U.S.C. § 1961(1), and includes acts involving murder and arson chargeable under state law and punishable by imprisonment for more than one year. *See* 18 U.S.C. § 1961(1).

A "pattern of racketeering activity" is defined as at least two acts of racketeering activity, one of which occurred after October 15, 1970, and one of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity. *See* 18 U.S.C. § 1961(5).

B. **Factual Basis.** If this matter were to proceed to trial, the Government and the defendant agree that the following facts would be proven beyond a reasonable doubt:

The defendant is a member of an enterprise called the "Brown Magic Clica" ("BMC"), a Sureño street gang with members in the Districts of Idaho and Oregon. Members of BMC associate in fact, signifying their association by the use of the labels "BMC," "Eastside," "Southside," "13," and various derivations of those labels. BMC members also signify their association with BMC by wearing the color blue and by BMC-related tattoos and graffiti.

The activities of BMC affected interstate commerce. Members of BMC commonly crossed state lines through the use of interstate highways to engage in BMC-related business, including attending BMC meetings and committing crimes in furtherance of BMC. Members also engaged in interstate communication with other members through the use of phones and letters sent via U.S. Mail.

**Plea Agreement** -3- Rev. April 2011 (General)

The defendant and other members of BMC agreed to participate in the conduct of BMC through a pattern of racketeering activity. BMC members were ordered by BMC leaders to engage in criminal activity, and to provide a portion of the profits during BMC meetings to be distributed to members who were incarcerated. BMC rules provide that members are to engage in acts of violence to promote respect towards BMC members. An act of disrespect towards a member of BMC is grounds for retaliation by acts of violence. Members who engage in acts of violence obtain increased respect and standing in BMC.

BMC rules state that any individual who cooperates as a witness in a criminal investigation against a BMC member is an enemy to BMC. BMC members are to engage in intimidation, including threats and acts of violence, against any cooperating witness. BMC members who cooperate in an investigation against another BMC member are subject to a "green light," which is an order by BMC leaders to BMC members to kill the subject of the "green light."

As part of the participation in BMC, the defendant and other members frequently communicated regarding whether members were following BMC rules, what crimes members were committing, which individuals were cooperating with law enforcement, and the distribution of BMC dues. The defendant frequently communicated with BMC members and associates through letters and telephone conversations.

On December 6, 2008, the defendant spoke with a BMC associate on the telephone. During that conversation, the defendant ordered BMC members to commit the arson of Club 7 in Fruitland, Idaho. The defendant admits that he ordered others to commit the crime of arson. No BMC member actually completed all the acts necessary for successful completion of the crime of

arson, and Club 7 in Fruitland, Idaho was never set on fire.

On February 8, 2009, the defendant spoke to two BMC members on the telephone. The defendant commanded that a former BMC member who had testified in a trial against one of the leaders of BMC be killed. The defendant asked the BMC members how long it would take to get it done.

Members of BMC later discussed the "green light" placed on the former BMC member who had testified in trial against one of the leaders of BMC, during three BMC meetings meetings. They also discussed letters from incarcerated leaders of BMC that discussed the "green light." During a meeting on April 19, 2009, a BMC member read a letter which stated "when a person is green lighted that doesn't mean an ass-whuppin' it means they need to be buried." During a meeting on May 23, 2009, a BMC member stated a letter required "missions" to be carried out in 13 days. During a meeting on June 20, 2009, a BMC member read a letter which stated that members are "obligated to bury every common enemy . . . or green light on site," that "those who have snitched on any member are a priority kill," and that "missions" are to be given out only by "the General or his appointed speaker."

The defendant admits that he ordered others to conspire to commit the crime of murder. No BMC member actually completed all the acts necessary for successful completion of the crime of murder, and the individual that the defendant commanded others to kill was never harmed.

IV. **SENTENCING FACTORS**

    A. **Maximum Penalties.** A violation of 18 U.S.C. 1962(d), as charged in Count One, is punishable by a term of imprisonment of up to 20 years, a term of supervised release of

not more than three years, a maximum fine of $250,000, and a special assessment of $100.

**B.** **Supervised Release.** Following release from prison, the defendant may be placed on supervised release for not more than three years.

The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crime to which the defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and/or prosecution.

**C.** **Fines and Costs.** The Government agrees that it will recommend that the Court not impose a fine. The Court may order a fine, and may also order the defendant to pay the costs of imprisonment, probation, and supervised release.

**D.** **Special Assessment.** The defendant will pay the special assessment before sentencing and will furnish a receipt at sentencing. Payment will be made to the United States District Court, Clerk's Office, Federal Building and United States Courthouse, 550 West Fort Street, Fourth Floor, Boise, Idaho 83724.

**V.** **UNITED STATES SENTENCING GUIDELINES**

**A.** **Application of Sentencing Guidelines.** The Court must consider the United States Sentencing Guidelines (USSG) in determining an appropriate sentence under 18 U.S.C. § 3553. The defendant agrees that the Court may consider "relevant conduct" in determining a sentence pursuant to USSG § 1B1.3.

The Court is not a party to the Plea Agreement. The Plea Agreement does not bind the Court's determination of Sentencing Guidelines range. The Court will identify the factors that will determine the sentencing range under the Sentencing Guidelines. While the Court may take

the recommendations of the parties into account, the Court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

Recognizing that the Court is not bound by this Agreement, the parties agree to the recommendations and requests set forth below.

B. **Sentencing Guidelines Recommendations and Requests.**

1. **Acceptance of Responsibility.** If the defendant clearly accepts responsibility for the offense, the defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under USSG § 3E1.1(a). The Government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met: (1) the defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the defendant has timely notified authorities of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. If, before sentence is imposed, the defendant fails to meet the criteria set out in USSG § 3E1.1, or acts in a manner inconsistent with acceptance of responsibility, the Government will withdraw or not make such a recommendation.

2. **Applicable Base Offense Level.** The Government agrees that the applicable base offense level is 33 based upon the defendant's commission of the underlying racketeering activity of Solicitation of Murder, pursuant to United States Sentencing Guidelines Manual §§ 2E1.1(a)(2)(Racketeering), 2A1.5 (Solicitation to Commit Murder). The defendant is free to argue against this recommendation and to request a lower base offense level.

3. **Downward Departure or Variance Request by Defendant.** Unless otherwise specified in this paragraph, the defendant will not seek a downward departure or

variance under 18 U.S.C. § 3553(a), without first notifying the Government and informing it of the basis, in writing, not less than 21 days before the date set for sentencing.

VI.   **WAIVER OF APPEAL AND 28 U.S.C. § 2255 RIGHTS**

A.   In exchange for this Agreement, and except as provided in subparagraph B, the defendant waives any right to appeal or to collaterally attack the conviction, entry of judgment, and sentence.

The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging the plea, conviction or sentence in this case. Further, if the defendant violates this waiver it will be a breach of this Agreement and the Government may withdraw from this Plea Agreement and take other remedial action.

If the defendant believes the Government has not fulfilled its obligations under this Agreement, the defendant will object at the time of sentencing; further objections are waived.

B.   Notwithstanding subparagraph A, the defendant shall retain the right to file one direct appeal only if one of the following unusual circumstances occur; the defendant understands that these circumstances occur rarely and that in most cases this Agreement constitutes a complete waiver of all appellate rights:

　　1.   the sentence imposed by the District Court exceeds the statutory maximum;

　　2.   the District Court arrived at an advisory Sentencing Guidelines range by applying an upward departure under Chapter 5K of the Guidelines; or

　　3.   the District Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory Sentencing Guidelines range as determined by the

District Court.

Notwithstanding subparagraph A, the defendant may file one habeas petition (motion under 28 U.S.C. § 2255) for ineffective assistance of counsel only if: (1) the motion is based solely on information not known to the defendant at the time the District Court imposed sentence; and (2) in the exercise of reasonable diligence, the information could not have been known by the defendant at that time.

## VII. PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The defendant agrees to provide material financial and other information requested by a representative of the United States Probation Office for use in preparing a presentence report. Failure to execute releases and provide such information violates this Agreement. Such failure will subject the defendant to additional penalties, including an enhancement under USSG § 3C1.1, or an upward departure under § 5K2.0, and relieve the Government of the obligations in this Agreement. Such failure will not, however, constitute grounds for withdrawing the plea of guilty unless the Government so requests.

## VIII. NO RIGHT TO WITHDRAW PLEA

The defendant understands that the Court may not follow the recommendations or requests made by the parties at the time of sentencing. The defendant cannot withdraw from this Plea Agreement or the guilty plea, regardless of the Court's actions.

## IX. CONSEQUENCES OF VIOLATING AGREEMENT

A. **Government's Options.** If the defendant fails to keep any promise in this Agreement or commits a new crime, the Government is relieved of any obligation not to prosecute the defendant on other charges, including charges not pursued due to this Plea

Agreement. Such charges may be brought without prior notice. In addition, if the Government determines after sentence is imposed that the defendant's breach of the Agreement warrants further prosecution, the Government may choose between letting the conviction(s) under this Plea Agreement stand or vacating such conviction(s) so that such charge(s) may be re-prosecuted. If the Government determines that a breach warrants prosecution before sentencing, it may withdraw from the Plea Agreement in its entirety.

      B.    **Defendant's Waiver of Rights.** If the defendant fails to keep any promise made in this Agreement, the defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the defendant entered a plea of guilty or which were dismissed under this Agreement. In addition, for any charge that is brought as a result of the defendant's failure to keep this Agreement, the defendant gives up: (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations expired after the defendant entered into this Agreement.

Furthermore, if the defendant does not enter an acceptable plea, the Government will move to continue the trial now set to allow the Government adequate time to prepare. The defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under 18 U.S.C. § 3161(h)(1)(G) or (h)(7)(A).

**X.    MISCELLANEOUS**

      A.    **No Other Terms.** This Agreement is the complete understanding between the parties, and no other promises have been made by the Government to the defendant or to the attorney for the defendant. This Agreement does not prevent any governmental agency from

pursuing civil or administrative actions against the defendant or any property. Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this Agreement does not bind or obligate governmental entities other than the United States Attorney's Office for the District of Idaho. The Government will bring the defendant's cooperation and pleas to the attention of other prosecuting authorities at the defendant's or defendant's counsel's request.

    **B.**  **Plea Agreement Acceptance Deadline.** This plea offer is explicitly conditioned on the defendant's notification of acceptance of this Plea Agreement no later than 5:00 p.m. on June 1, 2012.

## XI. UNITED STATES' APPROVAL

    I have reviewed this matter and the Plea Agreement. I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

WENDY J. OLSON  
UNITED STATES ATTORNEY  
By:

_____    May 16, 2012  
JUSTIN D. WHATCOTT          Date  
Assistant United States Attorney

## XII. ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand the Agreement and its effect upon my potential sentence. Furthermore, I have discussed all of my rights with my attorney and I understand those rights. No other promises or inducements have been made to me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney, concerning the plea to be entered in this case. In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including to enter a guilty plea. I am satisfied with my attorney's advice and representation in this case.

_____          5·11·12
ALFREDO CASTRO                            Date
Defendant

I have read this Plea Agreement and have discussed the contents of the Agreement with my client. The Plea Agreement accurately sets forth the entirety of the Agreement. I concur in my client's decision to plead guilty as set forth above.

_____          5/11/12
CHRISTIAN D. COLLINS                      Date
Attorney for the Defendant